Aug. 11,<br>1876.  STATE *ex rel.* ATTORNEY-GENERAL *v.* BARRON.

*Charter—Forfeiture.*

The defendants' charter, granted in 1836, empowered them to erect a bridge, and to demand and take, of persons passing over the same, tolls to be established by the superior court; and required the defendants to make returns once in five years to the court of all tolls so received. The defendants made such returns in 1837, and again in 1842, but not afterwards. In 1876 the attorney-general, in behalf of the state, filed an information in the nature of a *quo warranto*, charging that the defendants usurped upon the state the right, privilege, and franchise to demand and take toll of those passing over said bridge. The defendants answered, setting up their charter and right to take tolls under the same; but admitted that their charter was liable to forfeiture for their neglect to make the returns of tolls collected, but offered to make such returns, and asked to be permitted so to do. To the answer the state filed a general demurrer.

*Held*, that the demurrer could not be sustained, since the defendants asked to be heard in equity; and the cause was remanded for a hearing, under Gen. Stats., ch. 225, sec. 9, so that the court might determine whether in equity and good conscience a decree of forfeiture should be made.

FROM GRAFTON CIRCUIT COURT.

INFORMATION in the nature of a *quo warranto*, alleging that on the first day of July, 1872, and ever since, the defendants, Asa T. Barron and Oscar F. Barron, have usurped upon the state, and now usurp upon said state, the right, privilege, and franchise to demand and take toll of the good people of said state for passing and repassing over and across the Connecticut river upon a certain bridge, in Lebanon in said county, formerly known as the Lyman bridge, maintained by them across said river without warrant or authority of law therefor, but in the exercise of such usurpation.

The defendants, in their answer, say that the legislature, in 1836, passed an act to incorporate the Lyman Bridge Company, whereby Francis Lyman, Thomas Belknap, their associates, etc., were made a body politic and corporate under the name of Lyman Bridge Company, and were thereby vested with all the powers and were made subject to all liabilities pertaining to corporations of a similar nature; and by the second section of said act were further invested with the exclusive right and privilege to build or purchase and forever to have and maintain a bridge over and across Connecticut river, between the town of Lebanon, in the county of Grafton in the state of New Hampshire, and the town of Hartford, in the county of Windsor and state of Vermont, at any place between the lower bar in White River falls on said Connecticut river and the south line of the town of Lebanon ; and by the fifth section of said act it was provided that the capital stock of said corporation should consist of 200 shares, which might be transferred ; and by the sixth section of said act it was enacted that a toll be granted and established for the sole benefit of said corporation, the subjects and rates of which the justices of the superior court should settle and determine, providing that the net proceeds of said toll should not exceed ten per cent. per annum on the costs and expenditures of said corporation for and on account of said bridge ; and said corporation was thereby authorized to demand and recover the rate of toll thus established, and to prevent the passage thereon of any person and any property made the subject of toll until such toll should be paid therefor. And it was further provided, that said corporation, by their directors, should, at the next term of said court in Grafton county, and once in five years thereafter, cause an exhibit to be made under oath, to said court, of the costs and expenses incurred by said corporation, for and on account of said bridge, together with an account of all tolls received therefrom down to the time of making such exhibit ; and upon the omission or neglect to make such exhibit, all the rights and privileges granted by

said act should be subject to forfeiture. That a report and exhibit were made and accepted at the December term, 1837, of said court, and the rates and subjects of toll fixed and determined. And that an exhibit was made and filed in said court July 19, 1842, and since that time no exhibit has been filed, so far as the records show. And they say that they were not aware of such omission and neglect to file said exhibits until the commencement of these proceedings. That they fully believed that all the requirements of the charter had been complied with, and that they did not know that such exhibit was required until very recently. And they have ever intended to comply with the requirements of said charter in good faith, and are ready and desirous to make to said court as full an exhibit as is possible. And they pray for leave to file the same, as the omission and neglect have been through accident, misfortune, and mistake. That, to the best of their knowledge, information, and belief, the receipts for toll have averaged less since the five years reported in 1842 than during those five years, especially the net receipts. That by said act said corporation was made answerable for all damages that should be sustained through the insufficiency of said bridge, and for any defect or want of repair in the same. Said act was approved December 8, 1836, and by virtue of it the grantees purchased and built a bridge within the prescribed limits, and have since maintained it in suitable repair. The subjects and rates of toll were determined by said court as provided by the charter, and the net proceeds from said toll have never exceeded ten per cent. per annum on the costs and expenditures incurred for and on account of said bridge, but have in fact fallen very much short of the same. That said corporators sold and assigned all the shares and stock in said company to the defendants, as they lawfully might, whereby they became entitled to and possessed of all the rights, franchises, and privileges granted in said charter, and by reason thereof they have taken toll of those passing over said bridge, at a rate never exceeding that prescribed by said court, and never exceeding ten per cent. on the cost and expenditures incurred by said corporation for and on account of said bridge. They deny that they have usurped upon the state, or that they now usurp upon the state, the right, privilege, and franchise to demand and take toll of the good people of said state for passing over and across said river; and they deny that they have maintained a bridge across said river without warrant or authority of law therefor, in the exercise of any usurpation, but only in the proper exercise of their rights and privileges by reason of said charter. They say that they and their assignors and grantors have held, enjoyed, and exercised the aforesaid rights, privileges, and franchises, and maintained said bridge, and demanded and received toll as aforesaid, adversely, and without interruption, for more than twenty years prior to the filing of the information in this proceeding.

To this answer the attorney-general, in behalf of the state, filed a general demurrer, which the court *pro forma* sustained; and the defendants excepted.

The information, answer, and demurrer may be referred to in the argument, but are not to be printed.

Transferred by STANLEY, J., C. C.

*Spring*, for the defendants, cited *Building Association* v. *Stevens*, 5 Duer (N. Y.) 676; *Boston Glass Manufactory* v. *Langdon*, 24 Pick. 52; *King* v. *Amery*, 2 Term 515; *Colchester* v. *Seaber*, 3 Burr. 1866; *People* v. *Manhattan Co.*, 9 Wend. 351; 8 Wend. 645; *Company* v. *Woodman*, 2 Greenl. 404; *State* v. *Fourth N. H. Turnpike*, 15 N. H. 162; Angel & Ames on Corp. 624, 665, 659; *Russell* v. *McClellan*, 14 Pick. 63; *Winchelsea Causes*, 4 Burr. 1962, 2022, 2021, 2523.

*Carpenter*, on the same side, orally:

1. The information does not ask to have the charter forfeited.

2. The corporation is not made a party. Its franchise cannot be taken away unless it is made a party.

3. The information asks by what authority the defendants take toll, and they answer, by virtue of a charter. 5 Johns. Ch. 382, 389; *Commonwealth* v. *Inslow*, 5 Mass. 230; *State* v. *Fourth N. H. Turnpike*, 15 N. H. 166, 167; *Commonwealth* v. *Turnpike*, 5 Cush. 509; *People* v. *Manhattan Co.*, 9 Wend. 282; *State* v. *Olcott*, 6 N. H. 74. In the last case the charter had expired.

4. A *quo warranto* does not lie against the officers of a private corporation. Gen. Stats., ch. 235; *Commonwealth* v. *Dearborn*, 15 Mass. 125; *Goddard* v. *Smithett*, 3 Gray 116–122; *Rex* v. *Mosely*, 8 Q. B. 946; *Rex* v. *Danbury*, 2 Strange 1196; *Rex* v. *Bingham*, 2 East 108; *Rex* v. ————, 4 Term R. 384; *Rex* v. *Marsden*, 3 Burr. 1812.

*Lewis W. Clark*, attorney-general, for the state.

SMITH, J. This information is brought to inquire by what right these two defendants demand and take tolls of persons crossing the Connecticut river upon the Lyman bridge in Lebanon. In their answer they set forth a charter granted by the legislature to the Lyman Bridge Company in 1836, and that they by purchase have secured to themselves a transfer of all the shares into which the capital stock was divided. The defendants, then, compose the corporation, and no other persons have any interest or rights therein as stockholders. If nothing further appeared in the answer, the defendants would present a complete answer to the charge of usurpation made in the information. But they further set forth, that by their charter the corporation is required to make returns to the superior court, as often as once in five years, of their receipts from tolls; that such accounts were rendered in 1837 and 1842, since which time none have been rendered, by reason of their ignorance of such requirement. They claim that the tolls received by them have never exceeded the rates established by the court, and they pray that they may now be permitted to render such accounts.

The neglect of the corporation to furnish such exhibits does not, by

the terms of the charter, subject the corporation to a forfeiture of its franchise *ipso facto*. The omission makes the franchise "subject to forfeiture,"—by which is meant that the forfeiture must be regularly proved and established upon proper proceedings instituted for that purpose. Until that is done, the corporation has the right, under its charter, to demand and receive tolls from persons passing over its bridge.

Two objections are raised to the sufficiency of the information : 1. That it does not ask for a forfeiture of the charter. 2. That it is brought against the stockholders of the corporation, and not against the corporation itself.

These objections cannot prevail. The information appears to be in the form generally used. See *State* v. *Olcott*, 6 N. H. 74 ; and in *State* v. *Turnpike*, 15 N. H. 162, where no such objection was raised. The respondents must disclaim, or justify. At common law, when the respondent disclaimed, judgment was rendered immediately for the crown. If the respondent justified, judgment was rendered for the allowance of the franchise.

In *People* v. *Railroad*, 15 Wend. 113, it is laid down that when the information has for its object to oust the defendants from acting as a corporation, and to test the fact of their incorporation, it must be filed against individuals. When the object is to effect a dissolution of a corporation which has had an actual existence, or to oust such corporation of some franchise which it has unlawfully exercised, the information must be filed against the corporation.

The offer of the defendants to make the returns required by their charter, and their request to be permitted to do so, is in effect a confession that their franchise is subject to forfeiture on account of their neglect in this respect. They, in fact, allege reasons why the forfeiture ought not in equity to be enforced, as they may under sec. 9, ch. 225, Gen. Stats.

The neglect of the defendants, for more than thirty years, to make the returns required by their charter, presents a very strong reason for decreeing a forfeiture of their franchise. By the terms of the act itself such neglect renders their charter subject to forfeiture. But, inasmuch as the defendants pray to be admitted to make such returns, I think such permission should be given. Upon an examination thereof, and a hearing, the court can determine whether "in equity and good conscience a decree of forfeiture should be made." Gen. Stats., ch. 225, sec. 9. We cannot sustain the demurrer, since the defendants ask to be heard in equity.

CUSHING, C. J., and LADD, J., concurred.

*Remanded to the circuit court for a hearing in equity.*